Dayis, J.,
delivered the opinion of-the court:
From 1833 until some time in 1860, plaintiff, who is by trade a ship-carpenter, was employed in the Washington navy-yard; in 1860 he was without employment and, contemplating the establishment of a private ship-yard upon the Eastern Branch *154 of the Potomac, he was confronted with certain practical difficulties, which he undertook to surmount. The physical conditions existing' upon the Eastern Branch, particularly in relation to depth of water, were such that a marine railway having upon it a ship’s cradle of the design in common use could take out of the water only vessels of limited draught and length. To overcome this obstacle plaintiff devised an improvement to the cradle so that larger vessels could be taken successfully from the water and repaired at his projected shipyard. Before he had taken a patent for this invention the war broke out, and the increase of work at the navy-yard recalled plaintiff to his - former employment. The ship’s cradle at the navy yard, also situated upon the Eastern Branch of the Potomac, was of the usual type and was insufficient for the then needs of the service, as only boats of light draught and of little length could be taken out. The officers of the Navy in an endeavor to remedy this defect applied a device which was destroyed during the first trial, and they then requested Talbert, the plaintiff herein, to place his device upon the cradle, promising him compensation therefor. At that time Talbert had not received a pateut for his invention, but later it was issued to him. The device was applied to the cradle at Government expense, and has since operated successfully.
The findings show that the device required inventive genius,, that it was both novel and useful, and plaintiff demands in this action remuneration from the Government for the use of his invention.
He appears here by virtue of the following act of Congress :
“ Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the claim of William Talbert, of Montgomery County, Maryland, for the use, by the Government, óf his patented improvement for marine railways be, and the same is hereby, referred to the Court of Claims, with the authority to take jurisdiction thereof, and •to award judgment thereon, as the merits of the case ma,y demand, according to its value to the Government during the existence of such patent.
“Approved June 30, 1880.”
It is urged in behalf of plaintiff that this act assumes the validity of the patent. It is not, however, necessary for us to analyze the argument, advanced to support this interpretation, *155 as we find that the patent was valid, inasmuch as the improvement was novel and useful, and was the product of original. thought and inventive skill. The invention was adopted by the Government with plaintiff’s consent and with full knowledge of-his claims, ancl the device has been used successfully by the Government during many years. The case therefore falls within the principles heretofore announced by the Supreme Court and by t his court in several cases.
In Palmer’s Case (128 U. S. R., 269) the Supreme Court said r
“ The assumption of the appellant is erroneous. No tort was committed or claimed to have been committed. The Government used the claimant’s improvements with his consent, and certainly with the expectation on his part of receiving a reasonable compensation for the license. This is not a claim for an infringement, but a claim of compensation for an authorized use — two things totally distinct in the law, as distinct as trespass on land is from use and occupation under a lease.”
This court, after reviewing the decisions affecting this subject, said in Schilinger’s Case (24 C. Cls. R., 298):
“ A careful examination of these cases shows that a contract to pay is implied whenever the Government, acting through a competent agent, takes or uses individual property, acknowledging explicitly or tacitly that the property is individual property.”
We conclude that plaintiff may maintain this action upon the theory of an implied contract, arising from use of his device with his consent, the use being a public one and the invention having been recognized as private individual property. It is. therefore unnecessary to consider the argument that the special jurisdictional act is a legislative recognition of the validity in law of plaintiff’s claim.
Among other defenses it is contended that there should be-no recovery because plaintiff was a paid employó of the Government, and as a carpenter was directed to build upon the-cradle at Government expense the cars and attachments constituting his invention. This, it is urged, “is a case of license to use the invention if it be an invention.” It may first be noted that the claim here is not for preparing the cradle, or for-placing the device upon it, for which the plaintiff was paid by wages as a shipwright, but is for the use of a patented invention with knowledge of plaintiff’s claims, without adverse contention as to his alleged rights and with his consent. Further- *156 ii appears that the invention was made by plaintiff at a time when he was not in Government employ and without intention •at that time that it should be used at the navy-yard, and that it was made for the purpose of facilitating the taking up of vessels at the plaintiff’s projected private ship-yard.
The case therefore presents none of the elements found in Solomon’s Case (22 C. Cls. R., 342).
Talbert was not assigned to the task of devising, preparing, or making the device in question. The Government bore no ■expense of experiment incident to the invention, and when the device went upon the cradle it was complete, not experimental; nor when he made the invention was plaintiff an officer or employe of the Government, nor was he assigned to select a device to accomplish a desired result; that duty fell upon commissioned officers of the Navy; nor was this a transaction growing out of plaintiff’s official service or position. (See also Davis v. United States, 23 C. Cls. R., 329.)
Section 4899 of the Revised Statutes, so far as applicable to this case, provides in substance that .every person who before application for a patent, with the inventor’s knowledge and ■consent, constructs a machine afterwards patented, may use that machine without liability for royalty. It is urged for defendants that this statute bars any recovery by the plaintiff.
It is true that plaintiff consented to the application of his device to the cradle at the navy-yard; but that consent was coupled with a condition, to wit, that he should be paid for its use. Admiral Smith had not the power to commit the Government to a contract for royalty, but an implied contract arose, as we have seen, from the user, and having taken advantage of the act of their agent, Admiral Smith, the chief of the Bureau of Yards and Docks, in applying the device, they must be held to thecondition, agreed upon by him and Talbert, that the patentee should be compensated. Plaintiff did not consent to the gratuitous use of his invention. Quite the contrary", he consented to its use upon promise of compensation, and so the claim does not fall within the provisions of section 4899.
A patent, granted in England to one Turnbull, has been introduced by the defense as defeating plaintiff’s claim of novelty of invention. The Turnbull device is a cradle cut into sections connected by rods ; these sections are bunched at the foot of ■the railway, .the vessel’s forefoot grounds upon the upper sec *157 tion, which’is then pulled up the railway the length of the connecting rod, where the second section starts, taking up its-share of the vessel’s weight, and so ou with the other sections until the whole cradle is in motion with ■ the vessel upon it. Turnbull, by cutting the cradle, lessens it strength, while Tal-bert’s device is applied to a solid cradle. Turnbull’s cradle can not be run beyond the rails, while a solid cradle, with Talbert’s device upon it, can be so run; and Turnbull, without the use of so many sections as to seriously weaken the cradle, can not get the same depth of water at the head of the cradle as is given by Talbert’s device. As Turnbull can not successfully block up the vessel without blocking from the ground between-the sections, which would stop the cradle’s forward movement, he can' not conveniently re adjust an irregular distribution of weight j Talbert, on the other hand, can block the vessel up by timbers resting on the top of the cradle’s bed without interfering with the motion of the cradle up the railway. ¡Retaining’ the solid cradle, Talbert can conveniently adjust the cradle’s wheels so as to equally distribute the weight, while Turnbull is limited in this distribution by the spaces between the sections and incurs the danger of undue friction upon certain wheels, which, because of the difficulty of blocking already mentioned, it would be difficult, it not impossible, to correct. Talbert’s device is, in our opinion, a material improvement over Turnbull’s; it accomplishes the same end, but accomplishes it in a different and better manner.
There remains to be considered only the question of the amount of compensation which should be awarded plaintiff. He claims a large sum, basing this demand apparently upon value to the G-overnment of an unusual nature, due, perhaps, largely to the pressure of military necessity. It is urged, also, that the special act established a measure of damage peculiar to this case when it is said that this court should award judgment “as the merits of the case may demand, according to its-value to the Government during the existence of such patent.” It is said that if this act be literally construed and the judgment be proportioned to the value of the use of the invention' to the Government, it would be for a very large sum.
We do not understand that Congress intended in this act to establish a new rule for' estimating the remuneration plaintiff should receive, for while the words “ according to its value to- *158 the Government,” taken alone, might tend to th# belief that «orne exceptional advantage to the Government was to receive •exceptional compensation, these words are limited by the preceding clause, that we are to award judgment “ as the merits of the case may demand,” which means that we are to proceed, -as in other cases, to give to the plaintiff what he would recover in a similar action against an individual.
Discussing the word “ value” the Supreme Court have said (Suffolk Company v. Hayden, 3 Wall., 315):
“ But looking at the term value, in the connection in which it was used, it is quite clear that it had reference only to the utility and advantages or .value of the use of the improvement •over the old mode of cleaning cotton; not the value of the patent itself.”
This case was followed by the Court of Claims in Dahlgren’s Case (16 C. Cls. R., 30).
We assume that Congress, in enacting this special statute, had in view the rule of interpretation thus stated by the Supreme Court:
“ With the knowledge of our construction, like words being again repeated by Congress, it may be considered that a like construction was intended, and was expected to be given to those words.” (Mason v. Fearson, 9 How., 248-258.)
In speaking of the “value to the Government” of plaintiff’s invention, Congress, we understand, intended to prescribe, as the measure of damage in this case, the rule heretofore prescribed by the Supreme Court and followed by the Court of Claims.
Much difficulty has been encountered in estimating theamount of plaintiff’s recovery, for, while the invention is useful, it has not been used elsewhere than at the navy-yard, so that we are ignorant what royalty would bo paid by a private ship yard. This is a difficulty constantly recurring in actions against the Government, founded upon the use of patented inventions, as these inventions are usually of devices — such, for example, as fire-arms, ammunition, or military equipments — not used- by individuals.
In Dahlgren’s Case we said:
“ The materials for estimating the damages, or, in the language of the statute, the amount of compensation which Admiral Dahlgren’s estate is justly entitled to receive from the United States, are meager. The patented articles have no *159 market value, inasmuch as the United States is the only consumer. Therefore the inventor has lost no profits in the ordinary sense of the term. The inventor has made no license to any one, and had therefore no fixed royalty. The claimant, it is true, attempted to establish the reasonable worth of such a royalty on the basis of the weight of metal in the pieces; but the effort failed. The United States have not dealt in the articles, and have not used them so as to gain a profit in the ordinary commercial seiise of the term. We are therefore thrown back upon the rule laid down in Suffolk County v. Hayden (3 Wall., 320), and must find the measure of the claimant’s compensation in the utility and advantage of the invention to the United States over the old-modes or devices that had been used for working out similar results.”
Estimating upon this theory the value to the Government of plaintiff’s invention “during the existence” of the patent, we find it to have been $6,544.30, and award judgment in his favor for this sum.