## UNITED STATES *v.* BETHLEHEM STEEL COMPANY.

### APPEAL FROM THE COURT OF CLAIMS.

No. 127.   Argued March 16, 1922.—Decided April 10, 1922.

1. A contract of the United States to pay for its use of a patented invention is to be implied rather than a tortious appropriation by the officers acting for the Government.  P. 326.
2. When the Government uses a patented invention with the permission of the owner and does not repudiate his title, an implied contract to pay reasonable compensation for the use arises.  P. 327.
53 Ct. Clms. 348, affirmed.

APPEAL by the United States from a judgment sustaining a claim against it.

*Mr. Daniel L. Morris,* Special Assistant to the Attorney General, with whom *Mr. Solicitor General Beck, Mr. Harry E. Knight* and *Mr. Lucius E. Varney,* Special Assistants to the Attorney General, were on the brief, for the United States.

There must be a definite intention to take private property for public use before a contract, other requirements being satisfied, will be implied.  *Bedford* v. *United*

*States,* 192 U. S. 217,, 224; *United States* v. *Lynah,* 188 U. S. 445; *Tempel* v. *United States,* 248 U. S. 121; *Sanguinetti* v. *United States,* 55 Ct. Clms. 107, 144.

There was no intention, on the part of the Government, to use the Leibert invention. All the circumstances surrounding the use of the Stockett mechanism indicate that the officers of the Bureau of Ordnance had no idea that they were using a mechanism covered by the Leibert patent. *Corning* v. *Burden,* 15 How. 252; *Ney Mfg. Co.* v. *Superior Drill Co.,* 56 Fed. 152; *Russell* v. *United States,* 182 U. S. 516; *United States* v. *Berdan Fire-Arms Mfg. Co.,* 156 U. S. 552.

The Government believed it had a proprietary right to use the Stockett mechanism. *Harley* v. *United States,* 198 U. S. 229; *Schillinger* v. *United States,* 155 U. S. 163; *United States* v. *Palmer,* 128 U. S. 262; *United States* v. *Berdan Fire-Arms Mfg. Co.,* 156 U. S. 552.

*Mr. George W. Dalzell* and *Mr. Clarence P. Byrnes,* with whom *Mr. Robert C. Hayden* was on the brief, for appellee.

The claimant's case fulfills the requirements of an implied contract with the Government, as laid down by this court. *Cramp & Sons Co.* v. *International Curtis Marine Turbine Co.,* 246 U. S. 28, 40; *United States* v. *Société Anonyme, etc.,* 224 U. S. 309; *United States* v. *Berdan Fire-Arms Mfg. Co.,* 156 U. S. 552; *United States* v. *Great Falls Mfg. Co.,* 112 U. S. 645; *Hollister* v. *Benedict & Burnham Mfg. Co.,* 113 U. S. 59; *Bigby* v. *United States,* 188 U. S. 400; *United States* v. *Palmer,* 128 U. S. 262; *United States* v. *Lynah,* 188 U. S. 445.

*Russell* v. *United States,* 182 U. S. 516; *Schillinger* v. *United States,* 155 U. S. 163; *Harley* v. *United States,* 198 U. S. 229; *Bedford* v. *United States,* 192 U. S. 217; *Horstmann Co.* v. *United States,* 257 U. S. 138; and *Tempel* v. *United States,* 248 U. S. 121, 131, distinguished.

When an implied promise to pay has once arisen, a later denial by the Government (whether at the time of suit or otherwise) of its liability to make compensation does not destroy the right in contract and convert the act into a tort. *Tempel* v. *United States,* 248 U. S. 121, 131.

The argument that the Government used the Leibert patent unwittingly is negatived both by the transactions of the parties and by the patent situation.

MR. JUSTICE McKENNA delivered the opinion ot the court.

Suit by the Steel Company to recover royalties for the use by the United States of a patented invention owned by the Company.

On November 7, 1891, the United States by and through the Ordnance Bureau of the War Department contracted with the Bethlehem Iron Company for the manufacture of 100 guns of 8-inch, 10-inch and 12-inch calibre, which were to be equipped with the usual breech mechanism then known as " Model 1888 M 2".

On November 1, 1893, and pending the execution of the contract, Owen F. Leibert, an employee of the Bethlehem Iron Company, made application for an improvement in breech mechanism for ordnance. The Company notified the Bureau of the invention and of an application for a patent. It suggested that the Bureau have the application made special. This the Bureau did and a patent was issued to Leibert on March 20, 1894.

In February, 1894, the Bureau requested full information as to the patent and that it be permitted to use the same at the Watervliet Arsenal in an experimental test on a 12-inch gun. The request was granted and the Bureau prepared drawings for the test.

On December 23, 1895, while the Leibert mechanism was in course of construction the Chief of Ordnance forwarded to the Commanding Officer of the Arsenal a com-

munication showing a form of mechanism, saying that it seemed to possess marked merit and that it was a modification of the Leibert design, from which it differed " mainly in the mode of operating the withdrawal of the block, and in the pitch of the segmental rack to give increased power for rotation."

The Commanding Officer reported that the design was deemed superior to the other designs and that he had ordered its manufacture, as suggested by the Chief of Ordnance he should do in such case. It was thereafter manufactured and used by the United States on a number of guns.

The design that was used was prepared by John W. Stockett, a draftsman in the Ordnance Bureau, and was known and referred to as the " Stockett design ", and the " Department design ", but more generally as " Model 1895 ". Stockett applied for and received a patent for the design.

From time to time during 1894 to 1896 the Ordnance Bureau considered different forms of mechanism, and the Company notified the Bureau that work under the contract had reached a point that it was necessary to know the mechanism to be used, and requested that if any change was to be made the Company be notified. The Bureau replied that it had no objection to the use of the " Model 1895 ". The Company answered that it had no objection to conforming to that design, provided no modification be made in the price to be paid for the guns named in the contract on account of change in the breech mechanism. March 3, 1898, the Ordnance Bureau indicated its assent to that proposition.

On August 16, 1901, the Bethlehem Iron Company assigned all of its rights and franchises to the Bethlehem Steel Company and the latter Company asked that it be recognized as the successor to the Iron Company.

This was refused and the Bureau entered into an independent contract with the Steel Company and Congress subsequently (June 6, 1902) authorized the Steel Company to be the successor to the Iron Company.

On November 5, 1902, the Steel Company reported that it was proceeding with its contracts using the compound gear wheel shown in its prints 7374 and 7381, copies of which it enclosed, also a copy of the Leibert patent, and said, " We believe that the wheel we are now putting on the guns, as stated and which we understand the department is also using on its guns built elsewhere, of several calibers, is the same as that described in claim 1, et seq., of the said patent. We should be glad if the department, at its convenience, would give us an opportunity to lay before it more fully our views in this regard."

In reply to the above quoted letter, the Chief of Ordnance, on February 25, 1903, wrote the Steel Company as follows: " Referring to your communication of November 5, 1902, upon the subject of breech mechanism for guns of 1895 model, I have the honor to state that the claims in the patent of Owen F. Leibert, owned by you, are so much involved with the original designs of Farcot and the patents of F. F. Fletcher and John W. Stockett that this department does not feel that it is in a position to pass on the legal aspect of the case. If the Bethlehem Steel Company will bring suit to establish the points involved, this office will lend its assistance in bringing before the court all documents on hand pertaining to the subject."

On February 27, 1903, the Steel Company responded to the above letter of the Ordnance Bureau as follows: " In accordance with your suggestion we have instructed our attorney to bring suit against the department, to establish the points involved." .

The findings contain a detail of the mechanisms of the Leibert patent and the Stockett patent with copies of the letters patent.

The findings also give a list of patents constituting the prior art at the time of Leibert's application, in which was included the patent of F. F. Fletcher mentioned in the last letter (February 25, 1903) of the Chief of Ordnance to the Steel Company. And it was found that none of the patents of the prior art anticipated the Leibert design and that it was a patentable advance upon them, and it was further found that the combination of claims 1, 2 and 3 of it were found in " Model 1895."

From its findings the court deduced the ultimate facts: (1) That the breech mechanisms of the Leibert patent possessed patentable novelty, utility and invention and, (2) that those mechanisms were used by the United States " in and as a part of the said ' Model 1895.' " And it, ordered and adjudged that the Steel Company have and recover from the United States the sum of sixty-seven thousand dollars.

There is but one question in the case and that is the attitude of the Ordnance Bureau, representing the United States, toward the Leibert patent, whether in recognition of it, as contended by the Steel Company, or in opposition to, or, it may be said, in tortious use of it, as contended by the United States.

We have in other cases expressed our aversion to the latter conclusion except upon explicit declaration or upon a course of proceedings tantamount to it. A contract, express or implied in fact, must, it is true, be established, but one to pay for a mechanism used will be implied rather than a tortious appropriation of it—rather than the exercise by the United States of its sovereignty in aggression upon the rights of its citizens.

The Court of Claims so construed our cases; Mr. Justice Booth, speaking for the court, said the difficulty was

more in the application of the determining rule than in its ascertainment. And further, " from cases heretofore adjudicated upon similar principles it may be safely asserted that where the Government uses a patented invention ' with the consent and express permission of the owner ' and does not ' repudiate the title of such owner, ' an implied contract to pay a reasonable compensation for such usage arises. " *United States* v. *Berdan Fire-Arms Manufacturing* Co., 156 U. S. 552, and *United States* v. *Société Anonyme, etc.,* 224 U. S. 309, 320, were cited. We think the cases sustain the principle announced and we concur in it. And the findings demonstrate that it is sustained in the present case. There can be no doubt that the Ordnance Bureau knew that the Stockett design could only be used with the Leibert mechanism, and though declining, as it said, to pass " on the legal aspect " of such use, it would " lend its assistance in bringing before the court all documents on hand pertaining to the subject." This necessarily means that it would accept the decision as a determination of the right of the Company and the obligation of the United States. In other words, its attitude was not that of repudiation, not that even of antagonism, but that of submission to and acceptance of the right as it should be declared; and certainly consideration for the rights of inventors, instead of aggression upon them, is a policy of wisdom regarding the purpose of the War Department and, it may be, its necessities. It gives incentive to the inventive genius of the country by assuring recognition and reward to its work, if its work have merit. It is to be remembered that the Government is the only user of heavy ordnance and must encourage, not deter its improvement, if the Government would keep ready for whatever emergency may come to it.

We think, therefore, that the judgment of the Court of Claims should be, and it is   .

*Affirmed.*