Booth, Chief Justice,
delivered the opinion of the court:
This suit arises out of the following state of facts: The plaintiffs are the receivers of the Tidewater Coal Exchange, a corporation organized' under the laws of Delaware for the purpose of facilitating the dispatch of cargoes of coal at tidewater points. The corporation was a mutual one not organized for corporate profit. Coal of various consignors was, under the rules of membership in the corporation, consigned to the corporation and by it designated to certain pools in accord with its classification. As needed it was withdrawn from the pool and the consignor credited with *599 the shipment. Demurrage charges of course accumulated, as the cars stood for some time without unloading, and this charge was apportioned among the consignors upon a percentage basis each month, i. e., each shipper was charged with his portion thereof upon the basis of the ratio of individual consignments to the total sum accumulated for the period. No objection is interposed as to the fairness of the rules; and it is conceded that as a result thereof the shipper paid less than would have been required in direct dealings with the railroad. The whole arrangement was in effect the injection of a mutual intermediary, organized to deal with the entire transaction as a unit, and thereby facilitate the release of cars to the railroad and supply the demand for coal. The assessment and payment of demurrage in this way does not run counter to the carriers’ tariff filed with the Interstate Commerce Commission. Emmons Coal Mining Co. v. Norfolk Western R. R. Co., 272 U. S. 709; Smokeless Fuel Co. v. C. & O. Ry. Co., 142 Va. 355.
The Government, while 'not a subscribed member of the exchange, did over a considerable portion of time utilize the same. Coal was purchased by the United States and consigned to the exchange; all its rules and regulations were applied to the same, statements of accounts were regularly mailed to the Government, settlement was made in accord therewith, and at least $94,617.40 was paid by the Government to the exchange for its facilities. At the time of the dissolution of the corporation there was an outstanding indebtedness due from the Government of $56,619.90 demur-rage charges, and this suit is to recover the same.
The defendant, aside from the counterclaim to be discussed later, questions the right of recovery upon several grounds. It is said that the liability for demurrage obtains between the shipper and the railroads and that the latter have not assigned their claim to the plaintiff. We think the Emmons Coal Co. case, supra, answers the contention. It is of course manifest that the exchange did not transport any coal of the defendant from mines to tidewater. The exchange was not incorporated for such a purpose, its facilities were engaged at tidewater, and assuredly there was no *600 legal impediment in the way of the defendant’s engaging the same if deemed advantageous.
The authority of an officer of a government to contract on its behalf is a vital essential; the rule is firmly established, and if the case is dependent upon a contract in this sense, as well as section 3744, Revised Statutes, compelling the same to be in writing, the defense in this respect advanced in the defendant’s brief is invulnerable. What is here involved is not an executory but an executed contract, i. e., the defendant has received the full benefit of all the advantages and savings access to the exchange affords, and refused to pay in full for what said services are reasonably worth. It is neither asserted nor contended that the defendant accepted the service as gratuitous, or under circumstances justifying such an inference, for payment was made without question over a long period of time. Starting with the case of Clark v. United States, 95 U. S. 539, and consistently followed since, this court and the Supreme Court have adhered to the rule that a parole contract fully executed by the contractor upon his part, wherein the United States receives all the benefits of the undertaking, imposes a liability upon the latter as upon an implied contract. St. Louis Hay & Grain Co. v. United States, 191 U. S. 159; United States v. Bethlehem Steel Co., 258 U. S. 321; Andrews case, 41 C. Cls. 48; Moran Bros. v. United States, 39 C. Cls. 486.
There is nothing in the record disclosing an absence of authority to deal with the exchange; on the contrary, the findings show that what all the officers did with respect thereto, except the last payments here involved, was fully concurred in by the defendant. Payments were made in due course, upon the authority of the officers incurring the expense.
A more difficult issue than the above is involved in the admitted fact that the full amount of demurrage claimed is not proven to have been paid the railroads by the exchange. What portion of the total sum claimed is shown by proof of “ a substantial sum,” and this is indefinite. The *601 exchange, as the findings,show, was liable to the railroads and entered into bond to pay demurrage charges. The railroads dealt directly with the exchange, rendered their bills-of account to the exchange, and they have now on file with the receivers for the exchange claims for the amounts due. No claim has ever been preferred against the Government by the roads for the demurrage charges, and obviously the exchange, being a mutual organization without capital stock or accumulated profits, may only discharge its obligations by the collection of indebtedness due to it as such. The railroads may not sue the Government, and the receivers for the exchange may not liquidate the debt of same until they recover the money. Therefore, we are of the opinion that where the Government dealt with the exchange, received and accepted its benefits in every particular, liability to pay follows; and inasmuch as the railroads did likewise and no cause of action upon their part obtains, except against the receivers, a judgment against the Government follows. This we think is apparent in view of the statute of limitations; the railroads could not now sue as the statute is jurisdictional in this court.
The counterclaim of the defendant is sustainable. The exchange at the time it went into the hands of the receivers was indebted to the Government in the sum of $15,843.78 for coal shipments consigned to the exchange, which were subsequently sold by the latter, and the proceeds therefrom withheld from the Government. Clearly this reduces the exchange’s claim herein by this amount. In addition to this, the exchange has included in its claim a demand for a 3% Federal tax amounting to $1,649.12. The Government is not liable for the tax, so this amount will be deducted, as well as $2,755.85 paid the railroads heretofore as a Federal tax, thereby reducing the judgment to $36,371.15. Judgment for $36,371.15 is awarded the plaintiffs. It is so ordered.
Sinnott, Judge; Green, Judge; Moss, Judge; and Graham, Judge, concur.