DE FOREST RADIO TELEPHONE COMPANY *v.*
UNITED STATES.

APPEAL FROM THE COURT OF CLAIMS.

No. 142. Argued January 20, 1927.—Decided February 21, 1927.

A license to make and use a patented article does not depend on formal language, and, as a defense to a subsequent suit for infringement, a license may be inferred from the patent owner's words and acts indicative of his consent, with a reservation of his right to compensation. P. 241.

60 Ct. Cls. 1034, affirmed.

APPEAL from a judgment of the Court of Claims dismissing the petition in a suit to recover damages for alleged unlawful use of patented articles by the United States.

*Mr. Samuel E. Darby* for the appellant.

*Assistant Attorney General Galloway,* with whom *Solicitor General Mitchell* was on the brief, for the United States.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

This is an appeal from a judgment of the Court of Claims dismissing the petition of the appellant, on the 4th of May, 1925. This was before the effective date of the Act of February 13, 1925, c. 229, 43 Stat. 936, by which direct appeals from the Court of Claims under §§ 242 and 243 of the Judicial Code were repealed and the review by certiorari was substituted.

The De Forest Radio Telephone & Telegraph Company filed its petition in the Court of Claims against the United States, seeking to recover for an alleged unlawful use by the Government of certain patented vacuum tubes or audions, used in radio communication. The suit was brought under the Act of June 25, 1910, c. 423, 36 Stat. 851, as amended by the Act of July 1, 1918, c. 114, 40 Stat. 704, 705. The Act of 1910 provided that whenever an invention described in and covered by a patent of the United States should thereafter be used by the Government without license of the owner or lawful right to use it, the owner could recover reasonable compensation for the use in the Court of Claims, provided that the United States could avail itself of all defenses, general or special, which might be pleaded by any other defendant charged with infringement. The amending Act of 1918 enlarged the scope of the Act by providing that the recovery by the

owner should include compensation for patented inventions used or made by or for the United States.

The petition showed, that the two patents involved in the suit were granted to De Forest and by him were duly assigned to the appellant, the company bearing his name, and that that company executed and delivered to the Western Electric Company a written instrument conveying certain rights in the patents, which were subsequently conveyed to the American Telephone & Telegraph Company. This contract was set out in the petition. In consideration of one dollar and other good and valuable considerations, it granted a license to make, use, install, operate and lease, and to sell or otherwise dispose of to others for sale, installation and operation, apparatus and systems embodying or made or operating in accordance with the invention. It purported to give this license for the full terms of the patents and for all transferable rights of the De Forest Company in the inventions, except such as were expressly reserved by that company. The reservations included nonassignable rights for the purpose of making the articles in question for, and selling them to, the United States Government for its use. The instrument further provided that the Western Company and the De Forest Company might respectively institute and conduct suits against others for any of the patents within the fields in which each respectively possessed rights, but that all such suits should be conducted at the expense of the party bringing them, that party to retain any judgment recovered in any such suits.

Paragraph 12 of the instrument provided that the Western Company might transfer to others, in whole or in part, the rights granted by the instrument, and might assign rights thereunder, or grant licenses, to various persons, firms or corporations for the several uses to which the inventions were applicable. The petition further

alleges that the United States, being engaged in war, informed the American Telephone & Telegraph Company that it desired to have large numbers of the audions made promptly for it by the General Electric Company and others; and that the American Telephone & Telegraph Company replied by writing to the Chief Signal officer of the Army that it would not do anything to interfere with the immediate manufacture of the audions, provided it were understood and agreed that the Telephone & Telegraph Company " waived none of its claims under any patents or patent rights owned by it on account of said manufacture, and that all claims under patent rights and all patent questions be reserved and later investigated, adjusted and settled by the United States." The plan was accepted by the United States, and the orders for said audions were thereafter given by the United States to the General Electric Company and the Moorhead Laboratories, Inc., who made them and delivered them to the Government, which used them.

The petition further alleged, that, for the purpose of assisting the United States to obtain said audions promptly, pursuant to the orders given, the American Telephone & Telegraph Company furnished information, drawings and blueprints to the General Electric Company, and permitted representatives and experts of the United States and of said General Electric Company to witness and study the manufacture of said audions by the Telephone & Telegraph Company, all to the end that the audions might be the more promptly made and delivered to the United States for use in the war in which it was then engaged.

After the filing of the petition in the suit, it was amended by an averment that, after the audions were made and used by the United States, negotiations were carried on between it and the American Telephone Company, and that the latter company executed a release to

the United States and all manufacturers acting under its
orders of all claims for compensation for the making and
use of the audions, and that the release included " all
claims which had arisen or might thereafter arise, for
royalties, damages, profits or compensation for infringe-
ment of any or all letters patent owned or controlled by
the Telephone & Telegraph Company, whether expressly
recited therein or not, for the manufacture or use prior
thereto, and for use by the United States occurring there-
after."

The petition was demurred to, the demurrer was sus-
tained and the petition dismissed. It is conceded by the
parties that, on the face of the petition, with the contracts
which were made exhibits, the De Forest Company and
the American Telephone & Telegraph Company had each
the right to license to the United States the making and
use of these audions, and that, if either did so license
them, it would be a complete defense to a claim by the
other for damages for the tort of infringement.

The sole question, therefore, which the Court of Claims
considered, and decided against the appellant, was whether
on the facts recited in the petition the American Tele-
phone & Telegraph Company had in fact given a license
to the United States to have made and to use these
audions, covered by the patents. In other words, was the
claim which the American Telephone & Telegraph Com-
pany had against the United States for the manufacture
and use of the audions, based on a contract, or was it
based on a tort? If it was the former, it was a full defense
to any claim by the De Forest Company. If it was the
latter, the De Forest Company was entitled to recover
under the Act of 1918.

The appellant says that the necessary effect of the al-
legations of its petition is, that the Telephone Company
said to the United States, in answer to the United States'
notice that it wished to make and use the audions, " You

will be infringing my rights.   I shall not stop you but I notify you that I shall hold you for such infringement," and therefore that the subsequent acts of the United States and its manufacturers were torts.   We think a different construction should be given the allegations.   The agreement by the Telephone Company that it would not do anything to interfere with the immediate making of the audions for the United States, interpreted in the light of its subsequent action in assisting the United States to a prompt making of the audions for its use, in furnishing the needed information and drawings and blueprints for such manufacture, and in giving to the experts of the United States and its manufacturers the opportunity to witness and study the manufacture of audions by the Telephone Company, to the end that the audions might be more promptly manufactured and delivered to the United States for use in the war, made such conduct clearly a consent to their manufacture and use, and a license, and this without any regard to the effect of the subsequent release by the Telephone & Telegraph Company of compensation for such manufacture and use.   No formal granting of a license is necessary in order to give it effect.   Any language used by the owner of the patent, or any conduct on his part exhibited to another from which that other may properly infer that the owner consents to his use of the patent in making or using it, or selling it, upon which the other acts, constitutes a license and a defense to an action for a tort.   Whether this constitutes a gratuitous license, or one for a reasonable compensation, must of course depend upon the circumstances; but the relation between the parties thereafter, in respect of any suit brought, must be held to be contractual and not based on unlawful invasion of the rights of the owner.   Concede that if the owner had said, " If you go on and infringe my patent, I shall not attempt to enjoin you, but I shall subsequently sue you for infringement," the tort would not be waived—

that is not this case.   Here the circumstances show clearly that what the Company was doing was not only fully consenting to the making and using by the United States of the patent, but was aiding such making and using and, in doing so, was licensing it, only postponing to subsequent settlement what reasonable compensation, if any, it might claim for its license.   The case of *Henry* v. *Dick*, 224 U. S. 1, in its main point was overruled in the *Motion Picture Patents Company* v. *Universal Film Company*, 243 U. S. 502; but that does not shake the authority of the language of the Court in the following passage (p. 24):

" If a licensee be sued, he can escape liability to the patentee for the use of his invention by showing that the use is within his license.   But if his use be one prohibited by the license, the latter is of no avail as a defense.   As a license passes no interest in the monopoly, it has been described as a mere waiver of the right to sue by the patentee," citing Robinson on Patents, §§ 806 and 808.

In this case the language used certainly indicated the purpose of the Telephone Company not to seek an injunction against infringement, and not to sue for damages therefor, but only to sue or seek for an amicable settlement by payment of just compensation.   Such action by the Telephone Company was a license, and constituted a complete defense against a suit for infringement by the De Forest Company.

*Judgment affirmed.*