DUVAL SULPHUR & POTASH COMPANY, Appellant,

v.

POTASH COMPANY OF AMERICA, Appellee.

No. 5416.

United States Court of Appeals
Tenth Circuit.
April 25, 1957.

Lewis, Circuit Judge, dissented.

cussions and negotiations were held but the Anderson Patent was mentioned specifically along with the Weinig Patents relating to heating, cooling and temperature controls used in conjunction with Potash's flotation process. Duval knew that some of these patents were disputed by International Minerals and Chemical Corporation,[4] in particular the Anderson Patent, and that attempts were being made to negotiate a friendly settlement. Duval was not particularly interested in Potash's flotation patent, the Anderson Patent, because the one it considered using was thought to be better and beyond the scope of the patent employed by Potash. It was one very similar to that used by International.

During this period it is sufficient to say that the parties negotiated patent licensing which ultimately led to the licensing only of the Weinig Patents. Duval was fully aware that the Anderson Patent was involved in Potash's dispute with International, but Duval took the position consistently that a license for this flotation system was not necessary because the process it anticipated using avoided the Anderson Patent. At one time, Potash offered to license to Duval all its patents, including the Anderson Patent, for 10¢ per ton of ore processed, but Duval made it clear that it was not interested in the Anderson Patent and finally desired only the heat control patents. A formal license agreement was executed in May, 1950, for those patents at 5¢ per ton of product. In a letter to Duval, Potash stated that in the event Duval desired other than the heat control patents involved in the mining process, " * * * the royalty covering such expanded use will be made the subject of negotiations." Duval then constructed its plant at an initial cost of $9,000,000 in 1950 and used the flotation process similar to that used by International. Potash admitted that at no time did it consider enjoining Duval from using this flotation process as an

Jack D. Head and Joe E. Edwards, Houston, Tex. (Vinson, Elkins, Weems & Searls, Houston, Tex., and Hervey, Dow & Hinkle, Roswell, N. M., on the brief), for appellant.

James P. Hume, Chicago, Ill. (W. A. McGrew, Donald S. Stubbs, Denver, Colo., and Roy H. Blackman, Jr., Carlsbad, N. M. on the brief), for appellee.

Before HUXMAN, MURRAH and LEWIS, Circuit Judges.

HUXMAN, Circuit Judge.

Duval Sulphur & Potash Company[1] appeals from an adverse judgment below in favor of Potash Company of America.[2] Potash alleged an infringement by Duval of the Anderson Reissue Patent No. 21566.[3] Damages were sought, and recovered, under 35 U.S.C. §§ 284, 285. The Patent covers a flotation process by which potassium chloride (potash) is separated from sodium chloride (salt).

In 1947 Duval entered the business of mining and refining commercial potash near Carlsbad, New Mexico. Potash has been in this business in that area since 1939 and possessed several patents dealing with mining and refining processes. In 1949 in search of an acceptable process, Duval approached Potash regarding possible licensing of Potash's patents for use in the plant Duval was considering constructing near Carlsbad. General dis-

---

1. Hereinafter called Duval.

2. Hereinafter called Potash.

3. Hereinafter called the Anderson Patent.

4. Hereinafter called International.

infringement of its Anderson Patent, but it did expect at all times some form of compensation for its use.

On May 10, 1951, about a year after the license agreement above, Potash sued International alleging infringement of the Anderson Patent. Duval began commercial operations in March, 1952. Since Duval knew of the particulars in the dispute with International because it used a process similar to that used by International and had studied the Anderson Patent to determine its scope, Potash looked on as Duval used what Potash contended to be an infringing process on the theory that Duval "was proceeding with its eyes open" and running the risks inherent in such conduct. On December 17, 1952, International litigation resulted in a ruling that Potash was estopped by laches to pursue its suit and additionally that the Anderson Patent was valid and infringed by International.[5] By virtue of this judgment Potash took the position that a fair price for the use of the flotation process should be forthcoming from Duval. Failing to obtain any suggestion of a settlement, Potash thereupon brought this infringement suit to recover damages for the use of the then expired Anderson Reissue Patent.

Duval answered denying infringement and validity of the Patent, and in the alternative Duval asserted the defenses of implied license to use it in the period of alleged infringement and, in addition, urged that Potash was estopped to assert infringement. Subsequently Duval moved for summary judgment. The motion was denied and an order was entered setting a separate trial on the issues of implied license and estoppel. Leave was granted Potash to file an amended complaint which alleged there existed an implied license coupled with an implied promise to pay a fair royalty for the use of the Anderson Patent. Duval, of course, denied this.

The trial court took evidence and rendered judgment for Potash. It found that Duval rejected the Anderson Patent license prompted by the belief that its flotation process did not infringe that Patent; by limiting the licenses to the temperature control processes, Duval knew that it was not the mutual intention of the parties that a license was being granted to use the Anderson Patent without paying a just compensation; that Duval did use its flotation process; that Duval did know of Potash's dispute with International and that its process was similar to International's; and that Duval knew Potash contended the Anderson Patent was being infringed thereby. The court further found that Potash was aware of Duval's practices; that such were within the scope of the Anderson Patent; and that it did nothing to enjoin Duval believing that it would receive just compensation if it prevailed in the International controversy.

Based upon these findings, the court concluded that (1) the conduct and circumstances of the parties created an implied right in Duval to use the Patent with an implied promise to pay therefor; (2) Potash was not estopped to assert the implied agreement, nor to maintain an action for compensation; (3) if Potash prevailed on the other issues, it was entitled to an accounting to determine the amount due. Later the court amended the judgment to provide that " * * * nothing contained in this judgment shall be construed as determining whether or not the defendant has used * * * (the Anderson Patent) * * * or whether or not the defense of invalidity of the Anderson * * * Patent * * * or the question of non-infringement or non-use thereof is triable in this case."

At this point in the case, another judge presided over the trial. The court ruled the following further issues triable: (1) Whether Duval's process was within the scope of the Anderson Patent; (2) the

5. Affirmed, Potash Co. of America v. International Min. & C. Corp., 10 Cir., 1954, 213 F.2d 153. The court only considered the question of laches.

amount, if any, of the royalty due; (3) the validity of the Anderson Patent was "specifically determined" not to be an issue to be tried. After hearing evidence the court found that Duval did use the Patent and a reasonable compensation therefor was $46,066.20 plus interest. It was the court's position that the parties by their conduct in the trial on the other issues had assumed the position that the Duval process was within the Anderson Patent. It did take evidence on this issue, however, and supplemented its findings to include, "Independently of * * * stare decisis and estoppel * * *." the court found Duval a user of the Anderson Patent.

Duval urges four grounds of error for reversal; (1) the court erred in finding an implied promise to pay Potash for the use of the Anderson Patent, (2) in finding that Potash was not estopped to maintain the action, (3) in holding that the validity of the Anderson Patent was not an issue to be tried, and (4) in holding Duval's process was a use of the Anderson Patent.

■ Both parties to this litigation plead in the alternative and urge here that there is an implied license to use the Anderson Patent. They differ, however, regarding compensation therefor. Duval asserts there was a gratuitous license and Potash contends it was one with an implied promise to pay a just royalty. We hold that there is no implied license of any sort in this case. Such licenses arise only out of the conduct of the parties that indicates accord.[6] The facts at hand compel a conclusion of disagreement, and never agreement.

■ At all times Duval refused a license for the Anderson Patent because convinced that its process was no infringement. Duval's rejection of an express license with royalties negatives an agreement upon an implied license to the same effect. Duval denied Potash's rights, claimed the right to use its process regardless of the Anderson Patent, and disregarded all claims of Potash. This does not create an implied contract, with or without a promise to pay for an alleged use, although there was use with the patentee's knowledge.[7] Potash expected a return, but in no way may an implied license be founded upon a unilateral expectation.[8] Duval, never considered itself to be a user of the Patent, did not want that process and never bargained for it. To hold Duval to account to Potash under these circumstances would be to imply an agreement where none existed and, indeed where none was desired. To create an implied agreement one must have a meeting of the minds as in any contract, the variance from an express agreement being only the character of the evidence used to establish it.[9]

■ Although both parties pled a situation of implied license, this court is not bound by pleadings which do not square with the facts. The parties pled implied license only in the alternative, and the case now is restored to one of infringement alone.

■ Duval urges further that Potash, by its conduct, is now estopped to maintain the action. The contention advanced is one of equitable estoppel in nature, to the effect that Duval is entitled to free use of the Patent because prejudiced by Potash's misleading conduct. The court below concluded that Potash was not estopped and it based this largely on the finding that there was no reliance by Duval on Potash's position regarding the

---

6. De Forest Radio Telephone & Telegraph Co. v. United States, 273 U.S. 236, 241, 47 S.Ct. 366, 71 L.Ed. 625.

7. United States v. Societe Anonyme Des Anciens Etablissements Cail, 224 U.S. 309, 321, 32 S.Ct. 479, 56 L.Ed. 778.

8. 40 Am.Jur., Patents, § 149; May v. Western Lime Co., 1911, 65 Wash. 696, 118 P. 895, 44 L.R.A.,N.S., 333.

9. Williston on Contracts, 1927 Ed., Vol. I, p. 3.

scope of the contested patent. It found that Duval was motivated at all times by its conviction that it did not impose upon the breadth of the Anderson Patent. This finding has support in the record. Consequently, with no reliance on the conduct or position of the other to its detriment, no equitable estoppel can arise here [10] and Potash may maintain its infringement suit.

■ With license and estoppel out of the case, only the infringement, or tort, portion remains. Use of the Anderson Patent was found by the trial court. It did, however, refuse Duval the right to contest the Patent's validity, apparently on the basis of the earlier ruling of implied license. It may be that the record is sufficient to establish and sustain a finding that the use of the Duval process constitutes an infringement of the Anderson Patent, but this question necessarily hinges on a determination of the scope of the validity of the Anderson Patent. By the decision of this Court Duval is now in the position of an alleged infringer only, and not a licensee, express or implied. In defending the action Duval has every right to contest the validity of the Patent, and, upon the determination of the scope of validity, if any, to defend on the basis of non-use within that scope. The case is accordingly reversed and remanded for a new trial for findings and a clear determination of the two issues, namely, is the Anderson Patent valid and was there an infringement within the scope of validity.

LEWIS, Circuit Judge (dissenting).

I am not in accord with the holding of the main opinion that "there is no implied license of any sort in this case." The trial court found such license to have been granted and both parties concede the soundness of that finding but differ as to its legal consequences. I would decide the issues so raised and not deny a basic premise which is both unchallenged and, in my opinion, well supported by the record.

10. For this Court's position on equitable estoppel see Houtz v. General Bonding & Insurance Co., 10 Cir., 1956, 235 F.2d 591, 597, 598. See also, Walker on Patents, 1929 Ed., Vol. 1, §§ 361, 362.