**SHATTERPROOF GLASS CORP.,**
**Plaintiff,**

v.

**LIBBEY–OWENS–FORD CO., Defendant.**

**Civ. A. No. C 69–71.**

United States District Court,
N. D. Ohio, W. D.

May 18, 1972.

---

Rolf Scheidel, Shumaker, Loop & Kendrick, Toledo, Ohio, McCoy, Greene & Howell, Cleveland, Ohio, for plaintiff.

John B. Spitzer, Marshall, Melhorn, Bloch & Belt, Toledo, Ohio, for defendant.

## OPINION and ORDER

WALINSKI, District Judge:

This is a breach of *contract* action filed by the plaintiff Shatterproof Glass Corporation (hereinafter "Shatterproof"), a Delaware corporation with its principal place of business in Detroit, Michigan, against the defendant Libbey-Owens-Ford Company (hereinafter "L-O-F"), an Ohio corporation whose principal place of business is in Toledo, Ohio.

This Court has jurisdiction in this matter under 28 U.S.C.A. § 1332(a), by

way of diversity of citizenship of the parties and the amount claimed. Venue is proper in the Northern District of Ohio, Western Division, sitting in Toledo, Ohio.

On May 19, 1955, L-O-F and Shatterproof entered a license agreement (PX-1)[1], whereby Shatterproof was given a non-exclusive license, effective January 1, 1954, under a number of patents held by L-O-F as set forth in PX-1, Schedule A.

The subject matter of the license and patents is the manufacturing, bending, tempering and shading of glass, principally for automobile windshields (PX-13).

The application for the license was made pursuant to the mandate of an anti-trust, consent, decree entered on October 30, 1948, in Civil Action No. 5239 in this Court, involving L-O-F and others (PX-3). Section XIV of that judgment (hereinafter the "Toledo Decree") required L-O-F to grant a non-exclusive license to any applicant under certain patents (too numerous to be listed here, but part of the "Toledo Decree" PX-3), in which L-O-F was permitted to charge "a reasonable, non-discriminatory royalty," the amount of the royalty to be determined by the Court, *upon request of the applicant,* if the parties could not agree. (PX-3, §§ XIII A & B, XIV B & C). The Shatterproof license was issued pursuant thereto.

The object of the Toledo Decree was to equalize competition in the flat, laminated, and tempered glass fields generally. The patents in the Shatterproof license included some of those that were part of the Toledo Decree, but included many that were in the glass bending area, an expertise that was developing at the time of the Toledo Decree.

The Shatterproof/L-O-F license (PX-1, ¶ 11) contains a so-called "favored nations" clause as follows:

"LIBBEY-OWENS-FORD agrees that if any license heretofore or hereafter granted by it under any one or more claims of the licensed patents contains any more favorable terms or rates of royalty than granted to LICENSEE hereunder, then LICENSEE shall thereupon have the benefit of such more favorable terms or rates for the same claim or claims, but under no other claims of any of the licensed patents. LIBBEY-OWENS-FORD shall promptly notify LICENSEE of each license granted by it to others that includes any patent or patent claim licensed under this agreement and shall upon request, make available to counsel for LICENSEE, a complete copy of such agreement for inspection."

It is the claim of plaintiff that L-O-F breached this portion of the agreement by allegedly granting Ford a royalty-free license through the devices of release, license, license/release, and general acquiescence in non-enforcement of alleged infringement. It is further claimed that a 1931–1950 royalty-free exchange of patents, regardless of subsequent agreements, represents the real relationship between L-O-F and Ford.

The legal question involved, based on the facts discussed herein, arises from Shatterproof's claim that the "heretofore granted" and "hereafter granted" language of the "favored nations" clause (PX-1, ¶ 11), applied to the 1961 L-O-F/Ford license and the 1931–1950 L-O-F/Ford agreement, is in effect a covenant not to sue for past infringement, and is therefore a "retroactive license" at more favorable rates to Ford, necessitating a full refund of all royalties paid by Shatterproof to L-O-F. It is a further

1. The following abbreviations adopted by the parties will be used: PX refers to plaintiff's exhibits; DX refers to defendant's exhibits; TR refers to the transcript of testimony at trial; SB refers to Shatterproof briefs; LB refers to L-O-F briefs.

claim that by not notifying Shatterproof of the 1931–1950 L-O-F/Ford agreement, L-O-F breached the "favored nations" requirement of disclosure of other licenses at rates more favorable than Shatterproof's.

Very extensive suggested findings of fact have been filed by both parties, and insofar as they agree on the agreements, dates, correspondence, patents and claims, the Court adopts them without a detailed repetition.

A chronological review of the various transactions, agreements, dates, licenses, etc., will help in understanding the impact on the parties:

October 17, 1927—Ford/Triplex agreement (DX-1).

December 4, 1931—L-O-F acquired Triplex rights by assignment (DX-2).

December 4, 1931—L-O-F/Ford agreement (PX-4) re: Triplex assignment, and royalty-free patent exchange relating to laminated glass manufacturer; said agreement was modified and expanded by correspondence through 1950 (PX-4, DX-3, 4, 5 and 6).

October 30, 1948—Toledo Decree. Consent judgment in anti-trust litigation requiring L-O-F to grant non-discriminatory licenses to all applicants.

May 19, 1955—L-O-F/Shatterproof license effective January 1, 1954, including a release of infringement claims prior to January 1, 1954, an accounting of royalties due from January 1, 1954 to January 31, 1955, and a license under certain patents for the manufacture of automotive windshields. Negotiations began in March, 1952, culminating in the agreement (PX-5) April 13, 1962.

(The findings of fact filed by each party in the applicable parts will show conclusively that effective negotiations went on between L-O-F and Shatterproof, and L-O-F and Ford, culminating in the 1955 and 1962 license agreements. The court expressly finds that the negotiations in each case were difficult and particularly so in the L-O-F/Ford negotiations. The Court in no way finds any actions on the part of L-O-F that could be construed to be secret or fraudulent or expressly designed to deprive Shatterproof of any rights. The reading of some of the cases cited in both findings will show that Ford vigorously resisted any claims of infringement or any concessions in respect thereto, and generally, ended up in litigations and settlements taking long periods of time).

April 13, 1962—L-O-F/Ford agreements as follows:

(1) An L-O-F to Ford license (PX-5A) as follows:

| | | | |
|---|---|---|---|
| Pearse '297, | issued | 9/28/48 | ½¢ sq. ft. royalty |
| Jendrisak '607 | " | 5/8/51 | ½¢ " " " |
| Bamford '647 | " | 7/28/53 | ½¢ " " " |
| Walters '209 | " | 5/22/56 | royalty free |
| Bamford '287 | " | 1/20/59 | " " |

(2) An L-O-F to Ford license for claim 8 of Jendrisak '607 (excepted from the prior license) for $40,000 with an agreed *release* for past infringement for $60,000 (PX-5C).

(3) A *release* from L-O-F to Ford for infringement prior to January 1, 1961, of the licensed patents above and others (see PX-5B, Schedule A).

The L-O-F/Ford agreements had the following effect on the L-O-F/Shatterproof agreements executed May 19, 1955, but effective January 1, 1954.

The lower royalty rates granted to Ford by L-O-F of ½¢ sq. ft. of product for Pearse '297, Jendrisak '607, and Bamford '647 under the "favored nations" clause, made the same rates applicable to the Shatterproof license from the effective date of January 1, 1961.

This gave rise to a claim for a refund from L-O-F to Shatterproof (¶ 15 of Amended Complaint). The parties have determined the liquidated amount due as $80,436.61, which amount was paid to Shatterproof by stipulation as of June 2, 1971, making ¶ 15 of the Amended Complaint moot.

The L-O-F/Shatterproof license (PX-1, ¶ 4) further provided for an accounting of royalties due from the effective date of the Shatterproof license, January

1, 1954 to January 31, 1955. (Plaintiff styles this a retroactive license). The agreement (¶ 12) likewise provided a waiver for damages or royalties due prior to January 1, 1954, the waiver for past infringement being valued by the parties at $35,000 to $40,000.

Thus, the L-O-F/Shatterproof license, and the combined effect of the L-O-F/Ford agreements contain the same elements from their respective effective dates, to wit:

> 1) a release or waiver for past infringement claims for adequate consideration;
>
> a) in L-O-F/Ford—$460,000;
>
> b) in L-O-F/Shatterproof—a waiver and license agreement;
>
> 2) an accounting for royalties due from the respective effective dates to the date of execution;
>
> 3) a license for future use of the various patents for stated royalties.

Each agreement, by whatever name it is called (the names: license, release, waiver, waiver of damages, covenants not to sue, are not controlling), has certain effects.

■■ It is the nature of the document(s) which controls and determines whether an instrument is a release or covenant not to sue (Couch on Ins. 2d, 60:2). A failure to sue for ongoing infringement, where others are paying royalties for the same infringed patents, may be construed as a present license (De Forest Co. v. United States, 273 U.S. 236, at p. 241, 47 S.Ct. 366, 71 L.Ed. 625). This construction has prospective application of the "favored nations" clause, and was recognized by the parties in granting Shatterproof the lower royalties granted to Ford from the effective dates of their respective agreements, whether the royalties be paid from the date of execution or from the effective dates.

This leaves, as the crux of the cause, the Court's determination of the effect of the releases granted by L-O-F to Ford, and the releases in conjunction with the 1931–1950 L-O-F/Ford royalty-free exchange.

It is Shatterproof's claim that in the "heretofore granted" phraseology of the "favored nations" clause, that these two documents together constitute a royalty-free license to Ford from 1931 to 1962 and thereafter, and that Shatterproof is entitled to a full refund of royalties on the applicable patents; mainly Pearse '297 and claim 8 of Jendrisak '607.

The Supreme Court in discussing releases of contributory infringers of patents, has dealt with infringers as being a specie of tortfeasor and considers a release for past infringement a tort action settlement.

■ The Court therefore concludes that the release given by L-O-F of claims for past infringement by Ford, for the period prior to January 1, 1961, did not constitute a license within the meaning of the "favored nations" clause of the Shatterproof license. As a result, the "favored nations" clause did not apply to said release. Aro Mfg. Co. v. Convertible Top Co., 377 U.S. 476, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964); De Forest Radio Tel. Co. v. United States, 273 U.S. 236, 47 S.Ct. 366, 71 L.Ed. 625 (1927); Universal Oil Products Co. v. Vickers Petroleum Co., 2 Terry 238, 19 A.2d 727, 729 (Sup.Ct.Del.1941).

■ Even if the release were construed to be a license operating retroactively, the release would constitute a license to Ford only with respect to claims 10, 13 and 14 of the Pearse patent for an undetermined period of time; whereas under the terms of the Shatterproof license, all 15 claims of said patent were available for use. Shatterproof used 12 claims of Pearse during each of the years 1954–1965. Such "license" with respect to claims 10, 13 and 14 of the Pearse patent did not contain any more favorable terms or rates of royalty than were granted by L-O-F to Shatterproof. 69 C.J.S. Patents, § 216, p. 730; Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U.S. 301, 302, 29 S.Ct. 495, 53 L.Ed. 805 (1909).

██ The license granted by L-O-F to Ford in 1931 was limited to a license to use L-O-F patents to manufacture laminated glass, and did not cover any of the patents licensed in 1955 to Shatterproof. Baldwin Rubber Co. v. Pain & Williams Co., 107 F.2d 350, 353 (C.A. 6, 1939). As a result, the "favored nations" clause of the Shatterproof license did not apply to the Ford license. The failure of L-O-F to notify Shatterproof that as a part of its settlement with Ford in 1962, L-O-F agreed that Ford had a limited license under said agreement with respect to three patents licensed to Shatterproof, was not a material breach of the "favored nations" clause.

██ Even if the 1931 license to Ford was construed as covering any patent licensed to Shatterproof, the terms of such license included the grant by Ford of a cross-license to L-O-F and the consent by Ford to the acquisition by L-O-F of the Triplex patents. Prestole Corp. v. Tinnerman Products, Inc., 271 F.2d 146 (C.A. 6, 1959). The 1931 license to Ford did not contain any more favorable terms or rates of royalty than were granted by L-O-F to Shatterproof.

The Court concludes that L-O-F did not violate the "favored nation" provisions of the L-O-F/Shatterproof license.

██ The Court further concludes that the failure to reveal the existence of the 1931–1950 cross-license agreement, which had been mutually cancelled by Ford and L-O-F prior to any negotiations on any of the new licenses, is not a breach of the "favored nations" clause.

██ The Court also concludes that if the sums paid by Ford for the release were to be considered royalties, the amount allocable to the various patents and claims are incalculable.

Defendant L-O-F is entitled to a judgment dismissing this action at the costs of plaintiff Shatterproof.

The foregoing will comprise the Court's Findings of Fact and Conclusions of Law.

It is so ordered.