A. NATTERMAN & CIE GMBH, and
Aventis Behring L.L.C., Plaintiffs
and Counterclaim Defendants

v.

BAYER CORPORATION and Bayer
Healthcare LLC., Defendants
and Counterclaimants,

v.

Aventis Behring GmbH, Counterclaim
Defendant.

Civil Action No. 03–CV–2268.

United States District Court,
E.D. Pennsylvania.

April 18, 2006.

Dori Johnson Hines, James B. Monroe, Paul W. Browning, Timothy B. Donaldson, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, DC, for Plaintiffs.

Jeffrey B. Bove, Mary W. Bourke, Rudolf E. Hutz, Thomas F. Poche, Connolly Bove Lodge & Hutz LLP, Wilmington, DE, Richard D. Watkins, Woodcock Washburn LLP, Philadelphia, PA, for Defendants.

Robert R. Baron, Jr., Ballard, Spahr, Andrews and Ingersoll, Charles S. Marion, Pepper Hamilton LLP, Philadelphia, PA, for Plaintiffs and Counter Defendants.

Beatrice O'Donnell, Duane Morris LLP, Helena I. Poch Ciechanowski, Duane Morris, LLP, Philadelphia, PA, for Defendants and Counter Claimants.

1.  I will refer to Plaintiffs and Counterclaim Defendant collectively as "Plaintiffs" and to Defendants/Counterclaimants as "Defendants." I will refer to Defendant Bayer Corporation, Defendant Bayer Healthcare LLC, and their parent company Bayer AG collectively as "Bayer."

2.  Defendants' fourth affirmative defense is simply that "Defendants are licensed under the '427 patent." (Answer at 4.) A patent license may be express or implied. *Carborun-*

## MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

In this patent infringement action, Plaintiffs A. Nattermann & Cie GmbH ("Nattermann") and Aventis Behring L.L.C. bring suit against Defendants Bayer Corporation and Bayer Healthcare LLC for alleged infringement of U.S. Patent No. 5,565,427 ("the '427 patent"). Defendants bring counterclaims against Plaintiffs and Counterclaim Defendant Aventis Behring GmbH.[1] Plaintiff Nattermann is the owner of the '427 patent, Counterclaim Defendant Aventis Behring GmbH has a non-exclusive license to the patent, and Plaintiff Aventis Behring L.L.C. has a sub-license. The '427 patent involves a drug used in the treatment of hemophilia. Plaintiffs claim that an anti-hemophilila drug marketed by Defendants under the name KOGENATE® FS infringes the '427 patent. Defendants bring counterclaims against Plaintiffs for, *inter alia,* breach of a 1998 Supply Agreement entered into by Bayer and Centeon L.L.C., a predecessor of Plaintiff Aventis Behring L.L.C., under which Bayer was to manufacture its KOGENATE® product for Centeon L.L.C.

Before me is Defendants' motion for summary judgment on their fourth affirmative defense of license under the '427 patent. Defendants claim that the 1998 Supply Agreement between Bayer and Centeon L.L.C. granted Defendants an express license under the '427 patent and that this license is a complete defense to the instant patent infringement suit.[2] Also

*dum Co. v. Molten Metal Equip. Innovations,* 72 F.3d 872, 878 (Fed.Cir.1995). Defendants limit their instant summary judgment motion to the issue of an express license to the '427 patent under the 1998 Supply Agreement, and do not move for summary judgment under a theory of implied license. (Defs.' Mem. Supp. Mot. Summ. J. at 8 n. 5.) Plaintiffs, for their part, seek summary judgment on the grounds that Defendants have no license to the '427

before me is Plaintiffs' motion for summary judgment on Defendants' affirmative defense of license and Defendants' third counterclaim for breach of contract. Plaintiffs seek a judgment that Defendants have no express or implied license under the '427 patent and that, as a result, Defendants' counterclaim for breach of contract fails as a matter of law.[3] For the reasons that follow, I will deny both motions.

## I. FACTUAL BACKGROUND[4]

For purposes of the instant motions, the relevant undisputed[5] facts are as follows.

### A. *The 1993 Patent Settlement Agreement*

In 1993, Defendants' predecessor Miles Inc. ("Miles") and Rhône Poulenc Rorer Inc. ("RPR"), parent company of Centeon L.L.C.'s predecessor Armour Pharmaceutical Co. ("Armour"), signed an agreement ("the 1993 Patent Settlement Agreement") settling their previous patent litigation. (*Id.* ¶ 1.) As a result of the 1993 Patent Settlement Agreement, Bayer AG, the parent company of Miles, received an express license to certain patents, known as the "Scripps patents," involving recombinant factor VIII technology used in the treatment of hemophilia. (*Id.* ¶ 2.)

### B. *The 1994 Supply Agreement*

As part of the 1993 Patent Settlement Agreement, Miles and Armour, the predecessors of Bayer and Centeon L.L.C. respectively, entered into the 1994 Supply Agreement. (Pls.' Statement Undisp. Facts ¶ 6; Pls.' Opp. Defs.' Mot. Summ. J. Ex. 4.) The 1994 Supply Agreement obligated Bayer to supply Centeon L.L.C. "with certain defined quantities of recombinant factor VIII (the 'Product' as further defined below)...." (Pls.' Statement Undisp. Facts ¶ 7; Ex. 4 at 1.) The "Product" of the 1994 Supply Agreement consisted of Bayer AG's first-generation KOGENATE® product. (Pls.' Statement Undisp. Facts ¶ 9; Ex. 4 at 2–3, Ex. A.) Under the 1994 Supply Agreement, Bayer supplied Centeon L.L.C. with KOGENATE®, and Centeon L.L.C. sold this product under its own HELIXATE® tradename. (Pls.' Statement Undisp. Facts ¶ 10.) Section 9 of the 1994 Supply Agreement states:

> No license, express or implied, is granted by one party to the other hereunder, save for those purposes which permit performance, by each party, of its obligations under this Agreement.

(Pls.' Statement Undisp. Facts ¶ 11; Ex. 4 at 28.)

---

patent, either express or implied. (Pls.' Mem. Supp. Mot. Summ. J. at 2 n. 1.)

3. Plaintiffs assert that Defendants' breach of contract counterclaim is based on the premise that the 1998 Supply Agreement included a covenant not to sue for infringement of the '427 patent, and thus "stands or falls" with Defendants' affirmative defense of license. (Pls.' Mem. Supp. Mot. Summ. J. at 4–5.)

4. On a motion for summary judgment, I must draw all reasonable inferences from the underlying facts in the light most favorable to the non-moving party. *Kornegay v. Cottingham,* 120 F.3d 392, 395 (3d Cir.1997). Because the parties have cross-moved for

summary judgment, rather than presenting a separate statements of facts for each motion, I list only the undisputed facts and view any disputed facts in the light most favorable to the non-moving party in my analysis below.

5. Plaintiffs submitted a Statement of Undisputed Facts in connection with their opposition to Defendants' motion for summary judgment (Pls.' Statement Undisputed Facts Supp. Opp. Defs.' Mot. Summ. J.), which Defendants accept with the exception of ¶¶ 69–70 (Defs.' Reply Supp. Mot. Summ. J. at 4). Plaintiffs incorporate this Statement of Undisputed Facts into their motion for summary judgment. (Pls. Mem. Supp. Mot. Summ. J. at 5.)

## C. *The 1998 Supply Agreement*

From 1997 to 1998, Bayer and Centeon L.L.C. renegotiated the 1994 Supply Agreement and formed the 1998 Supply Agreement. (Pls.' Statement Undisp. Facts ¶ 13.) Bayer and Centeon L.L.C. renegotiated the Supply Agreement, in part, so that each party could secure continued access to future recombinant factor VIII products. (*Id.* ¶ 14.) Under the 1998 Supply Agreement, Bayer agreed to "continue to provide quantities of human recombinant Factor VIII to Centeon under the terms and conditions specified herein. . . ." (*Id.* ¶ 15; Defs.' Mot. Summ. J. Ex. A at 1.) The 1998 Supply Agreement was to be "considered part of the Settlement Agreement between Bayer AG and Armour just as the 1994 Agreement was part of said Settlement Agreement." (Pls.' Statement Undisp. Facts ¶ 16; Ex. A at 1.) The parties incorporated Section 9 of the 1994 Agreement into Section 10 of the 1998 Agreement. (Pls.' Statement Undisp. Facts ¶ 18; Ex. A at 27.)

## D. *KOGENATE® FS and the 1998 Supply* Agreement

When the parties negotiated and signed the 1998 Supply Agreement, Bayer was marketing its first-generation KOGENATE® product, which does not infringe the '427 patent. (Pls.' Statement Undisp. Facts ¶¶ 19, 22.) The 1998 Supply Agreement provides that Centeon L.L.C. and its successors would receive access to later improvements of Bayer's KOGENATE® product. (Pls.' Statement Undisp. Facts ¶ 24; Ex. A. at 3.) One such contemplated improvement that was specifically contemplated in the Agreement was called KOGENATE® II.[6] (*Id.* ¶ 27.) KOGENATE® II was defined in the 1998 Supply Agreement as "an antihemophilic Factor VIII (Recombinant) protein to be formulated as a sterile, stable, purified, freeze-dried concentrate, purified and formulated without the use of albumin." (*Id.* ¶ 28.) Bayer has assigned the trademark KOGENATE® FS to the KOGENATE® II Product referenced in the 1998 Supply Agreement. (*Id.* ¶ 29.) At the time Bayer and Centeon L.L.C signed the 1998 Supply Agreement, Bayer had not provided Centeon L.L.C. with full specifications for any future recombinant factor VIII product in development, including KOGENATE® FS. (*Id.* ¶ 26.)

## E. *The '427 Patent*

The application that issued as the '427 patent, entitled "Stabilized Factor VIII Preparations," was filed in the United States Patent and Trademark Office ("PTO") on April 7, 1992 and issued on October 15, 1996. (Pls.' Statement Undisp. Facts ¶ 56.) Dr. Wilfried Freudenberg is the named inventor on the '427 patent. (*Id.* ¶ 58.) In 1992, Dr. Freudenberg assigned to Behringwerke AG his entire right, title, and interest in the application that ultimately issued as the '427 patent. (*Id.* ¶ 59.) Shortly after the '427 patent issued, Behringwerke AG merged with Hoechst AG. (*Id.* ¶ 60.) As the legal successor to Behringwerke AG, Hoechst AG became the owner of the '427 patent after the parties merged. (*Id.* ¶ 61.) In 1997, Hoechst AG assigned its entire right, title, and interest in the '427 patent to Centeon Pharma GmbH. (*Id.* ¶ 62.) Centeon Pharma GmbH changed its name to Aventis Behring GmbH, and on or about January 26, 2000, the assignment of the '427 patent was formally changed to Aventis Behring GmbH. (*Id.* ¶ 66.) Aventis Behring GmbH sold the '427 patent to A.

---

**6.** Under the 1998 Supply Agreement, to the extent Bayer successfully developed a KOGENATE® II product, Centeon L.L.C. was required to pay Bayer a series of milestone payments totaling $10 million. (Pls.' Statement Undisp. Facts ¶ 27.)

Nattermann & Cie GmbH, as reflected in an assignment document filed in the PTO on March 21, 2003. (*Id.* ¶ 68.)

Bayer first became aware of the '427 patent in December of 1996, when the '427 patent was cited during the prosecution of U.S. Patent 5,763,401. (*Id.* ¶ 3 1.)

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment should be granted "if, after drawing all reasonable inferences from the underlying facts in the light most favorable to the non-moving party, the court concludes that there is no genuine issue of material fact to be resolved at trial and the moving party is entitled to judgment as a matter of law." *Kornegay v. Cottingham,* 120 F.3d 392, 395 (3d Cir.1997). A factual dispute is "genuine" if the evidence would permit a reasonable jury to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In deciding a motion for summary judgment, the court must draw all reasonable inferences in the non-moving party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

■■ With respect to Defendants' motion for summary judgment on their affirmative defense of license, it is the moving party (Defendants) who will bear the burden of proof at trial. Where the moving party has the burden of proof at trial on the issue for which summary judgment is sought, the moving party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof, no reasonable

jury could find for the non-moving party. *See In re Bressman,* 327 F.3d 229, 237–38 (3d Cir.2003) (citing *United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1438 (11th Cir.1991)).

■■ With respect to Plaintiffs' motion for summary judgment on the Defendants' affirmative defense of license and Defendants' counterclaim for breach of contract, it is the non-moving party (again the Defendants) who will bear the burden of proof at trial. Where the non-moving party has the burden of proof at trial, the moving party need only show that the non-moving party "has failed to produce evidence sufficient to establish the existence of an element essential to its case" in order to obtain summary judgment. *Alvord–Polk, Inc. v. Schumacher & Co.,* 37 F.3d 996, 1000 (3d Cir.1994). A non-moving party who has the burden of proof at trial must make a showing sufficient to establish the existence of a genuine issue for trial in order to survive summary judgment. *Witco Corp. v. Beekhuis,* 38 F.3d 682, 686 (3d Cir.1994).

## III. DISCUSSION

Defendants move for summary judgment on the affirmative defense of express license under the '427 patent.[7] Plaintiffs cross-move for summary judgment on Defendants' affirmative defense of license, seeking judgment as a matter of law that Defendants have no license to the '427 patent, either express or implied. Plaintiffs also move for summary judgment on Defendants' third counterclaim (breach of the 1998 Supply Agreement), which they assert is dependent on a finding that the Agreement created a license to the '427 patent. All of these issues boil down to the single question of whether Defendants were licensed under the '427 patent.

---

**7.** As noted above, the motion of Defendants that is before me does not seek summary judgment on a theory of implied license.

## A. *Background*

■ A license, whether express or implied, is a defense to patent infringement.[8] *See Carborundum Co. v. Molten Metal Equip. Innovations*, 72 F.3d 872, 878 (Fed. Cir.1995). The alleged infringer has the burden of establishing this affirmative defense. *Id.* It has been observed that

> [n]o formal granting of a license is necessary in order to give it effect. Any language used by the owner of the patent, or any conduct on his part exhibited to another from which that other may properly infer that the owner consents to his use of the patent in making or using it, or selling it, upon which the other acts, constitutes a license and a defense to an action for a tort.

*Wang Labs., Inc. v. Mitsubishi Electronics Am., Inc.*, 103 F.3d 1571, 1580 (Fed.Cir. 1997) (quoting *De Forest Radio Tel. & Tel. Co. v. United States*, 273 U.S. 236, 241, 47 S.Ct. 366, 71 L.Ed. 625 (1927)). Defendants claim that the 1998 Supply Agreement between Plaintiffs' predecessor Centeon L.L.C. and Bayer gave Defendants an express license to manufacture KOGEN-ATE® FS, the drug that Plaintiffs allege infringes the '427 patent. The determination of whether there is an express license or an implied license to a patent is "governed by ordinary principles of state contract law." *State Contracting & Eng'g Corp. v. Florida*, 258 F.3d 1329, 1339 (Fed. Cir.2001) (quoting *McCoy v. Mitsuboshi*

*Cutlery, Inc.*, 67 F.3d 917, 920 (Fed.Cir. 1995)).

■ Here, the parties agree that Connecticut law applies to the interpretation of the 1998 Supply Agreement upon which Defendants' claim of express license is based.[9] Under Connecticut law, "[a]lthough ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact, where there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." *Hanks v. Powder Ridge Restaurant Corp.*, 276 Conn. 314, 885 A.2d 734, 739 (2005) (internal citations omitted).

## B. *Defendants' Motion for Summary Judgment*

Defendants do not dispute that no license to the '427 patent is explicitly mentioned in the 1998 Supply Agreement or any of its precursors. However, Defendants claim that Section 10 of the 1998 Supply Agreement created an express license to the '427 patent:

> *No Express or Implied License*
>
> No license, express or implied, is granted by one party to the other hereunder, *save for those purposes which permit performance, by each party, of its obligations under this Agreement.*

(Defs.' Mot. Summ. J. Ex. A at 27 (emphasis added).) Defendants claim that the plain meaning of Section 10 is to create express licenses to such patents as "permit

---

8. An express license is merely "[o]ne which is granted in direct terms." Black's Law Dictionary 920 (6th ed.1990). The definition of "implied license" in this context is slightly more nuanced. In patent law, the term "implied license" has been used to refer to "different categories of conduct which lead to the same conclusion," namely, "a patentee's waiver of the statutory right to exclude others from making, using, or selling the patented invention." *Wang Labs., Inc. v. Mitsubishi Electronics Am., Inc.*, 103 F.3d 1571, 1580

(Fed.Cir.1997). "[C]ourts and commentators relate that implied licenses arise by acquiescence, by conduct, by equitable estoppel (estoppel in pais), or by legal estoppel." *Id.* These distinctions as to implied licenses are not relevant for purposes of the instant motions.

9. The 1998 Supply Agreement states that it "shall be construed, interpreted and governed by the laws of the State of Connecticut." (Defs.' Mot. Summ. J. Ex. A at 28.)

performance, by each party, of its obligations under this Agreement." Defendants claim that because a license to the '427 patent was essential to Bayer's performance of the contract, this provision creates an express license to that patent. They cite various other provisions of the Supply Agreement in support of the contention that Bayer required a license to the '427 patent in order to perform its obligations under the Agreement.

In order for Defendants to obtain summary judgment on the question of express license, it would have to be clear from the four corners of the 1998 Supply Agreement that Section 10 grants Bayer an express license to the '427 patent. The fact that the provision is entitled "No Express or Implied License" and provides, in part, that "[n]o license, express or implied, is granted by one party to the other hereunder" is at least enough to raise sufficient ambiguity to preclude summary judgment for Defendants.[10]

## C. *Plaintiffs' Motion for Summary Judgment*

Plaintiffs raise several arguments for why summary judgment for Defendants is improper and why, in fact, summary judgment should be granted in Plaintiffs' favor: (1) Centeon L.L.C. never had the right to license the '427 patent to Bayer in the first place; (2) even if it did, the plain terms of the 1998 Supply Agreement foreclose any express or implied license to the '427 patent; and (3) even if the Supply Agreement were construed to grant an express or implied license to patents necessary to the performance of the parties' contractual obligations, the '427 patent would not fall

within the scope of such a license. An absence of genuine issues of material fact as to any one of these three issues might entitle Plaintiffs to summary judgment. Thus, I will address each argument in turn.

### 1. Whether Centeon L.L.C. had the right to license the '427 patent

▇ Plaintiffs first argue that Centeon L.L.C., could never have granted any license to the '427 patent to Bayer, whether express or implied, because it never owned any right, title or interest in the '427 patent. There are genuine issues of material fact as to this question.

It is undisputed that at the time of the execution of the 1998 Supply Agreement, the '427 patent was held by Centeon Pharma GmbH. In 2000, Centeon Pharma GmbH changed its name to Aventis Behring GmbH, thus effectively transferring all right, title, and interest in the '427 patent to Aventis Behring GmbH. Plaintiffs point out that the 1998 Supply Agreement was entered into by Bayer and Centeon L.L.C., not Centeon Pharma GmbH. Plaintiffs contend that Centeon Pharma GmbH and Centeon L.L.C. were always separate entities and that ownership of the '427 patent by Centeon Pharma GmbH would not have given Centeon L.L.C. the right to grant licenses to the patent. Defendants, on the other hand, claim that "Centeon Pharma LLC/Aventis Behring LLC exercises complete control and domination over Centeon Pharma GmbH/Aventis Behring GmbH" such that the two are actually the same entity.[11] (Defs.' Statement Facts Supp. Opp. Pls.' Mot. Summ. J. at 1–2.) Defendants further note that "GmbH," which is

---

10. Moreover, as discussed further below with regard to Plaintiffs' motion for summary judgment, there are other outstanding issues of material fact that preclude summary judgment to either party.

11. Defendants also argue that Plaintiffs admitted in the Complaint that Centeon L.L.C. had the right to license the '427 patent by virtue of the statement that "Bayer has not taken a license under the '427 patent to manufacture, offer for sale, and sell its KOGEN-

an abbreviation for *Gesellschaft mit bes-chrankter Haftung*, is simply the German equivalent of "limited liability company" or "L.L.C." *See* Ralph De Sola, Abbreviations Dictionary 374 (8th ed.1992).

There are genuine issues of material fact as to the corporate relationship between Centeon L.L.C. and Centeon Pharma GmbH. Thus, Plaintiffs cannot obtain summary judgment on the grounds that Centeon L.L.C. did not have the right to grant an express or implied license to the '427 patent.

### 2. Whether the 1998 Supply Agreement forecloses any license to the '427 patent

■ Plaintiffs also argue that the plain terms of the 1998 Supply Agreement unambiguously negate the existence of any license to the '427 patent, express or implied. Under Connecticut law, contract interpretation is a question of fact for the jury unless the parties' intent is "clear and unambiguous" from the four corners of the contract, in which case it becomes a question of law for the court. *Peter–Michael, Inc. v. Sea Shell Assocs.*, 244 Conn. 269, 709 A.2d 558, 562 (1998); *see also McCann Real Equities Series XXII, LLC v. David McDermott Chevrolet, Inc.*, 93 Conn.App. 486, 890 A.2d 140, 153 (2006) ("When only one interpretation of a contract is possible, the court need not look outside the four corners of the contract."). The parties' intent is not clear and unambiguous from the four corners of the 1998 Supply Agree-

ment with respect to whether the Agreement grants licenses to patents necessary for the performance of the parties' contractual obligations.

Section 10 of the 1998 Supply Agreement provides:

> No license, express or implied, is granted by one party to the other hereunder, save for those purposes which permit performance, by each party, of its obligations under this Agreement.

(Defs.' Mot. Summ. J. Ex. A at 27.) In order to grant summary judgment for Plaintiffs on this question, I would have to find that the language of Section 10 clearly and unambiguously forecloses any express or implied license to the '427 patent. Section 10's plain terms do not do this. Plaintiffs would have me read this provision as stating simply that "no license, express or implied, is granted by one party to the other hereunder." Such a statement would indeed have been an unambiguous expression that the contract foreclosed any express or implied licenses. Yet Section 10 does not say that; rather it states that the Agreement creates no express or implied licenses "*save* for those purposes which permit performance, by each party, of its obligations under this Agreement." A plausible reading of this provision would thus be that it *does* grant such licenses as are necessary to the performance of the 1998 Supply Agreement.

At the very least, Section 10 does not clearly and unambiguously rule out an implied license to the '427 patent.[12] To the

ATE® FS product *to parties other than Aventis Behring L.L. C.*" (Compl. ¶ 24 (emphasis added).) Defendants would have me take this statement as a binding judicial admission that Bayer *did* receive a license from Centeon L.L.C. to sell KOGENATE® FS to Aventis Behring L.L.C., and thus that Centeon L.L.C. did in fact have the right to license the '427 patent. As a matter of everyday speech this might not be an unreasonable assumption to make from the statement in Plaintiffs' com-

plaint; however, it does not necessarily follow as a matter of logic. The statement only alleges that Bayer does not have a license to sell KOGENATE® FS to parties other than Aventis Behring, and neither admits nor denies that Bayer is licensed to sell to Aventis Behring. Accordingly, I will not infer any admission of Centeon L.L.C.'s right to license the '427 patent.

**12.** Plaintiffs "move for summary judgment of no license—either express or implied." (Pls.'

contrary, the provision seems to contemplate the possibility that one or more patent licenses would be necessary to the performance of the Agreement, and carves out such licenses from the general statement that "no license, express or implied, is granted by one party to the other hereunder." Thus, Plaintiffs are not entitled to summary judgment because the 1998 Supply Agreement does not, as a matter of law, foreclose the possibility of a license to the '427 patent. There is a genuine issue of material fact as to this question.

Plaintiffs also argue that, read as a whole, the 1998 Supply Agreement cannot be interpreted to create a license to the '427 patent, because it incorporates express licenses to other patents while making no mention of the '427 patent. Plaintiffs rely on the principle of *expressio. unius est exclusio alterius*, under which the express mention of one thing (such as the grant of a license) in a written document is presumed to exclude another that is not mentioned. The problem with this argument is that nowhere does the 1998 Supply Agreement expressly grant any patent rights to either party. Plaintiffs claim that because the 1998 Supply Agreement was considered part of the 1993 Patent Settlement Agreement settlement between RPR and Miles, predecessors of Plaintiffs and Defendants respectively, the 1998 Supply Agreement incorporates the express license to the Scripps patents that was included in the 1993 settlement. The failure to mention the '427 patent explicitly in the 1998 Agreement, Plaintiffs argue, coupled with the express license of the Scripps patents in 1993, creates a presumption that the 1998 Agreement creates no new licenses.

If the 1998 Supply Agreement itself had explicitly mentioned a license to the Scripps patents, or to some other patent, and conspicuously omitted any mention of the '427 patent, Plaintiffs' argument might have some force. *See, e.g., State Contracting,* 258 F.3d at 1340 ("The provision for licensing of patents is limited to work under the contract and does not convey any license to future use of the patented technology. The existence of this provision shows that, if the parties had intended to convey other patent rights, they would have done so explicitly."); *Hilgraeve Corp. v. Symantec Corp.,* 265 F.3d 1336, 1345 (Fed.Cir.2001) ("Here, the contract provided for Hilgraeve to transfer 'all copyright rights in the Software,' but failed to mention the transfer of patent rights. From the terms of the contract we cannot conclude that the parties intended to transfer any patent rights."). However, because the 1998 Supply Agreement is completely silent on the issue of licenses to intellectual property (aside from Section 10, which I have already found to be ambiguous), Plaintiffs' argument fails.

. There are genuine issues of material fact as to whether the 1998 Supply Agreement was intended to create a license to the '427 patent as a patent necessary to the performance of the parties' contractual obligations.

### 3. Whether a license to the '427 patent was necessary to Bayer's performance of its obligations under the 1998 Supply Agreement

Finally, Plaintiffs argue that even if the 1998 Agreement granted express or implied licenses to those patents necessary to

Mem. Supp. Mot. Summ. J. at 2 n. 1.) Because I find that the plain terms of the 1998 Supply Agreement do not, as a matter of law,

necessarily foreclose an implied license to the '427 patent, I do not address whether they foreclose an express license to the patent.

the performance of the parties' obligations, the '427 patent was not such a patent. The parties devote much of the briefing of the instant motions to debating whether Bayer could have fulfilled its obligations under the Agreement without infringing the '427 patent. This question presents genuine issues of material fact.

## IV.  CONCLUSION

Because there are genuine issues of material fact precluding summary judgment to either party on the issues raised in the instant motions, I will deny both parties' motions for summary judgment.

### ORDER

**AND NOW,** this ___ 18th ___ day of April, 2006, it is **ORDERED** that:

(1) Defendants and Counterclaimants' Motion for Summary Judgment on the Fourth Affirmative Defense of License under the '427 Patent (Doc. # 95) is **DENIED.**

(2) Plaintiffs and Counterclaim Defendants' Motion for Summary Judgment on Bayer's Fourth Affirmative Defense of License under the '427 Patent and Bayer's Third Counterclaim of Breach of Contract (Doc. # 104) is **DENIED.**